# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | **Bankruptcy Case** |
| **SOMERSET, INC.** | **No. 13-00203-JDP** |
| Debtor. | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Randal J. French, BAUER & FRENCH, Boise, ID, Attorney for Debtor

    George M. Parham, Chief Legal Counsel, and Jed W. Manwaring, EVANS, KEANE, LLP, Boise, ID, Attorneys for the State Insurance Fund.

### *Introduction*

Chapter 11[1] debtor, Somerset, Inc. ("Debtor"), filed a Motion for

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

Sanctions for Violation of Stay by State Insurance Fund. Dkt. No. 95. The Court conducted a hearing concerning the motion on May 30, 2013, and took the motion under advisement. Dkt. No. 104. The Court has considered the submissions of the parties, the evidence presented, and the arguments of counsel, as well as the applicable law. This Memorandum contains the Court's findings, conclusions, and disposition of the issues. Fed. R. Bankr. P. 7052; 9014.

*Facts*

Idaho's State Insurance Fund ("SIF") provides workers' compensation insurance for Idaho employers. Although employers may obtain insurance from private insurers, the SIF was established "for the purpose of insuring employers against liability for compensation under this worker's compensation law and the occupational disease compensation law and of securing to the persons entitled thereto the compensation provided by said laws." Idaho Code § 72-901. If requested by SIF, an Idaho employer must submit a payroll report ("PR") to SIF indicating the number of employees on its payroll; SIF then uses the PR

MEMORANDUM OF DECISION – 2

information to calculate the employer's insurance premium. Idaho Code § 72-922. Under this system, in practice, employers therefore pay the premiums for workers' compensation insurance provided by SIF in arrears.

Debtor is an Idaho employer operating several Jiffy Lube franchises. It obtained workers' compensation insurance, Policy No. 527606 (the "Policy"), from SIF.[2]

On February 7, 2013, Debtor filed a chapter 11 bankruptcy petition. Dkt. No. 1. SIF received notice of the bankruptcy filing the following day. Aff. of George Parham at ¶ 5, Dkt. No. 117. On March 1, 2013, SIF sent a letter to Debtor with a request that it complete a form PR for February 2013, which SIF indicated was due back by March 26, 2013. Aff. of Julie Poedy at ¶ 5-6, Dkt. No. 99; Aff. of George Parham, Exh. 1, Dkt. No. 117. The report also indicated that Debtor's premium payment should not be returned to SIF with the PR, but that an invoice would follow. *Id*. Debtor

---

[2] The Policy also covered another Idaho company, TVA, Inc., owned by the same shareholders as Debtor.

MEMORANDUM OF DECISION – 3

did not timely return the PR. Aff. of Julie Poedy at ¶ 9, Dkt. No. 99.

On April 1, 2013, SIF sent a policy cancellation notice to Debtor, effective on May 1, 2013, allegedly due to Debtor's failure to file the PR for February.[3] Aff. of Brian Lane at ¶ 1, Dkt. No. 118; Aff. of Judy Poedy at ¶ 14, Dkt. No. 99. Debtor returned the PR to SIF on April 30, 2013, after 5:00 p.m. Aff. of George Parham, at ¶ 3, Dkt. No. 117. Debtor submitted a payment to SIF for the March and April premiums on May 24, 2013. *Id.* at ¶ 6.

During this time, Debtor's counsel ("Counsel") and George Parham, SIF's general counsel, had communicated about the cancellation of the Policy. Mr. Parham indicated to Counsel that the Policy would be reinstated. *Id.* at Exh. 4. However, also during this time, SIF's agents were wrestling with the fact that the Policy issued by SIF actually covered two separate companies, one of whom had filed for bankruptcy relief (*i.e.*, Debtor), and another that had not. SIF staff was therefore attempting to

---

[3] Another notice was also sent on April 5 to a separate address indicating the Policy had a balance owing, and that the past due amounts must be paid to avoid cancellation. Aff. of George Parham, Exh. B., Dkt. No 99.

MEMORANDUM OF DECISION – 4

determine whether to reinstate the Policy as two separate policies, or to reinstate the Policy as it previously existed.

In the meantime, on May 17, 2013, SIF sent Debtor a Request for Final Payroll on Cancelled Policy. Aff. of Julie Poedy, Exh. F, Dkt. No. 99. Frustrated with this development, that same day, Debtor filed a Motion for Sanctions for Violation of Stay concerning SIF's purported cancellation of the Policy. Dkt. No. 95. On May 20, 2013, the Idaho Industrial Commission issued a letter to Debtor indicating it had received notice of the cancellation of the Policy, reminding Debtor of the "serious consequences, including penalties, for operating a business with employees without having a worker's compensation policy to protect those employees." Aff. of Julie Poedy, Exh. H. Dkt. No. 99. On May 29, 2013, SIF communicated to Debtor that the Policy would be reinstated as of May 1, 2013, with no lapse in coverage. Aff. of George Parham at ¶ 5, Dkt. No. 117.

The hearing on Debtor's sanctions motion took place on shortened notice on May 30, 2013. Dkt. Nos. 96, 98-102. At the hearing, SIF was

MEMORANDUM OF DECISION – 5

represented by Mr. Parham.[4] During the hearing, Mr. Parham initially argued that SIF had not violated the automatic stay when it cancelled the Policy. Counsel disagreed, and later in the hearing, Mr. Parham conceded SIF's cancellation of the Policy was a stay violation. The Court thereafter directed the parties to file briefs regarding whether, assuming a stay violation had occurred, monetary sanctions against SIF were appropriate, and if so, the amount.

Despite the concession at the hearing, in SIF's post-hearing brief, it again argued that cancellation of the Policy under these facts was not a stay violation, citing to supporting case law. Dkt. No. 119. In response, Debtor again disagreed, contending that the Policy cancellation violated § 362(a)(3). Dkt. No. 124. Debtor seeks significant monetary sanctions for SIF's alleged stay violation.

---

[4] Mr. Parham reminded the Court several times during the hearing that he was not a "bankruptcy attorney." The Court appreciated his candor and, no offense intended, discerned that he indeed seemed to lack an understanding of some bankruptcy concepts. After the hearing, attorney Jed W. Manwaring, an experienced bankruptcy litigator, filed a brief on behalf of SIF. Dkt. No. 119.

MEMORANDUM OF DECISION – 6

*Analysis and Disposition*

As noted above, at the hearing, Mr. Parham, who appeared as counsel for SIF, conceded that SIF violated the automatic stay when it cancelled the Policy. Even so, the Court has discretion whether to treat that concession as a binding judicial admission, foreclosing SIF from now taking a contrary position. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) (citing *Kohler v. Inter–Tel Techs.*, 244 F.3d 1167, 1180 n.9 (9th Cir. 2001)); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988); *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991). As events at the hearing unfolded, Mr. Parham first indicated that he did not believe cancelling the Policy was a stay violation, but later, in one instance, conceded it was. Mr. Parham's apparent lack of familiarity with the Bankruptcy Code, together with his equivocation during the hearing, persuades the Court that it should not deem Mr. Parham's statements to be a binding concession in this case. Since SIF took a firm position that its actions did not violate the stay in its post-hearing brief, and since Debtor had a fair opportunity to respond to those arguments in its brief, the Court

MEMORANDUM OF DECISION – 7

will first consider whether SIF in fact violated the stay before considering whether sanctions are required.

*A. Did SIF's Cancellation of the Policy Violate § 362(a)?*

Under § 362(a), by operation of law, an automatic stay arises upon the commencement of a bankruptcy case. The scope of the automatic stay is expansive. Among other actions, and as relevant here, § 362(a) operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). Debtor contends SIF violated this aspect of the automatic stay when it cancelled the Policy without first seeking relief from the stay from this Court pursuant to § 362(d).

In a bankruptcy case, "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). This definition is to be construed broadly. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983). In particular, a debtor's rights under insurance policies have been held to be property of the bankruptcy estate, and as such, subject to the protections afforded by

MEMORANDUM OF DECISION – 8

the automatic stay.  *See Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 518-19 (9th Cir. 1986); *In re Mila, Inc. v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 542 (9th Cir. BAP 2010); *see also* Lam, *Cancellation of Insurance: Bankruptcy Automatic Stay Implications*, 59 Am.Bank.L.J. 267 (1985) (reviewing cases and concluding that stay relief is necessary prior to cancellation of debtor's insurance policies).  That Debtor was delinquent in the payment of premiums for the Policy does not alter the reach of the stay.  *Augustino Enters., Inc. v. Amgro, Inc. (In re Augustino Enters., Inc.)*, 13 B.R. 210 (Bankr. Mass. 1981) (cancellation of business insurance policy postpetition for failure to pay premiums violated the automatic stay).

Accordingly, the Court concludes that, under the undisputed facts, SIF's actions in cancelling the Policy without first obtaining relief from this Court constituted a violation of the § 362(a) automatic stay.

*B.  Sanctions*

Actions taken in violation of the automatic stay are void.  *Ung v. Boni (In re Boni)*, 240 B.R. 381, 384 (9th Cir. BAP 1999) (citing *Schwartz v.*

MEMORANDUM OF DECISION – 9

Case 13-00203-JDP    Doc 163    Filed 07/19/13    Entered 07/19/13 10:52:47    Desc Main
                      Document      Page 10 of 16

*United States (In re Schwartz)*, 954 F.2d 569 (9th Cir. 1992)); *Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 11.2 IBCR 90, 93 (Bankr. D. Idaho 2011). In this sense, then, Debtor's coverage under the Policy never effectively lapsed. In addition, SIF has already reinstated the Policy with no lapse in coverage. Because of this, while Debtor was inconvenienced, it has been placed back in the same position as if the cancellation had not occurred. *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir. 2009); *In re Christensen*, 98.1 I.B.C.R. 15, 15 (Bankr. D. Idaho 1998).

Despite SIF's actions to reinstate the Policy, though, an award of monetary sanctions may be appropriate. Because Debtor is a corporation, rather than an individual, it is not entitled to rely upon § 362(k) as the statutory basis for recovery of sanctions for the stay violation. Instead, any sanctions imposed in this context must be based upon § 105(a), which authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a); *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR 110, 111 (Bankr. D. Idaho 2010) (citing *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189-90, 1196

MEMORANDUM OF DECISION – 10

Case 13-00203-JDP   Doc 163   Filed 07/19/13   Entered 07/19/13 10:52:47   Desc Main
                    Document      Page 11 of 16


(9th Cir. 2003)). Simply put, SIF's actions in violating the automatic stay could be treated as contempt, and sanctions may be imposed to address SIF's conduct under § 105(a). *In re Dyer*, 322 F.3d at 1189; *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 14 (9th Cir. BAP 2002).

To establish that SIF committed civil contempt, Debtor must show, by clear and convincing evidence, that the target party violated a specific and definite order of the court. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR at 111. However, the automatic stay is such a specific and definite order of the Court. *In re Dyer*, 322 F.3d at 1191; *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR at 111. Actions taken in violation of the stay must have been "willful" to support an award of sanctions. *Id*. (citing *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995)); *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR at 111-12. A "willful violation":

> does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

MEMORANDUM OF DECISION – 11

*In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR at 112 (quoting *In re Pace*, 67 F.3d at 191).  Under this standard, Debtor must prove that SIF knew of the automatic stay, and also that SIF's actions were intentional.

In this case, SIF learned of Debtor's bankruptcy filing on February 8, 2013.  It sent the cancellation notice to Debtor on April 1, 2013.  SIF's knowledge of Debtor's bankruptcy filing imparted by the notice it received is the legal equivalent of knowledge of the automatic stay for purposes of awarding damages under § 362(k) of the Code.  *Zilog, Inc. v. Corning (In re Zilog, Inc.)*,[5] 450 F.3d 996, 1008 (9th Cir. 2006); *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th Cir. BAP 2006) (citing *In re Ramirez*, 183 B.R. 583, 589 (9th Cir. BAP 1995)).  However, courts have been reluctant to extend that principle to the contempt context, and instead have required actual knowledge by the target party of the existence of the automatic stay to support a finding of contempt.  *In re Zilog, Inc.*, 450 F.3d at 1008; *In re*

---

[5] *In re Zilog, Inc.* is a discharge injunction case, but the Ninth Circuit has noted that "we see no material difference between the discharge injunction and the automatic stay for [civil contempt] purposes." *In re Zilog, Inc.*, 450 F.3d at 1008 n.12.

MEMORANDUM OF DECISION – 12

*1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR at 112. As explained by the Ninth Circuit,

> [T]o justify sanctions, the movant must prove that the creditor (1) knew the [automatic stay] was applicable and (2) intended the actions which violated the [stay].

*In re Bennett*, 298 F.3d at 1069. Thus, for SIF's actions to constitute a contempt, it is Debtor's burden to demonstrate that SIF knew not just about the pending bankruptcy case, but of the existence of the automatic stay, when it cancelled the policy.

Debtor did not satisfy this burden. On this record, it is unclear when SIF became aware of the automatic stay in the first instance, and whether that occurred prior to the date it cancelled the Policy. The cancellation notice was issued on April 1, 2013, and indicated the Policy would be cancelled on May 1, 2013. Mr. Parham spoke with Debtor's counsel on several occasions, including April 30, 2013, but there is no indication the automatic stay was ever discussed in those conversations. Aff. of George Parham at ¶ 10, Dkt. No. 117. And while Debtor's counsel

MEMORANDUM OF DECISION – 13

sent SIF a letter on May 1, 2013, that letter also did not explicitly mention the existence of the automatic stay.

Moreover, after SIF received notice that the automatic stay was in effect, and that its actions may have violated that stay, it had an "affirmative duty to remedy any stay violation, including violations that occurred prior to the creditor's becoming aware of the stay." *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR at 112 (citing *In re Dyer*, 322 F.3d at 1192) (citing *Calif. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd)*, 98 F.3d 1147, 1151 (9th Cir. 1996)). As near as the Court can determine from this scant record, SIF was likely already in the process of reinstating the Policy with no lapse in coverage by the time it learned of the existence of the automatic stay. Under these facts, the Court declines to conclude that SIF, as an entity, willfully violated the stay, or refused or failed to take steps to remedy the stay violation until forced by the bankruptcy court to do so, as was the case in *In re Dyer* and *In re 1600 W. Sunnyside Dr. #106, supra*.

Debtor has not persuaded the Court to find that SIF willfully violated the automatic stay. Awarding sanctions under § 105(a) is

MEMORANDUM OF DECISION – 14

committed to this Court's discretion, *In re Del Mission Ltd.*, 98 F.3d at 1154 n.8, and in the exercise of that discretion, the Court concludes that monetary sanctions are not appropriate under these facts.[6]

*Conclusion*

Though SIF violated the automatic stay in effect in Debtor's bankruptcy case when it cancelled the Policy, Debtor has not shown by clear and convincing evidence that SIF had actual knowledge of the existence of the automatic stay when it did so.  Moreover, SIF took prompt steps to retroactively reinstate the Policy without any lapse in coverage. Under these facts, Debtor's motion for an award of monetary sanctions will be denied.

A separate order will be entered.

---

[6] Of course, with this decision, SIF has now been educated and informed about the scope of the automatic stay in bankruptcy cases as it relates to cancellation of debtors' insurance coverage.  SIF must modify its procedures to conform to the stay; future violations of the stay by SIF may justify sanctions.

MEMORANDUM OF DECISION – 15

Dated: July 19, 2013

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 16